UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARKELL N. MITCHELL,

                      Plaintiff,

v.

                      Case No. 22-CV-196-JPS

SHEBOYGAN COUNTY, NATHAN F. HABERMAN, GRANT D. SCAIFE, JEFFREY A. JAEGER, JOSEPH SERGE, ALEXANDER HUBER, JOHN DOE OFFICERS, JOHN DOE SUPERVISOR, and CITY OF SHEBOYGAN,

                      **ORDER**

                      Defendants.

Plaintiff Markell N. Mitchell, an inmate confined at Waupun Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee, addresses his motion for an extension of time and order to use release account, and screens his complaint.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing

fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On April 11, 2022, the Court ordered Plaintiff to pay an initial partial filing fee of $12.57. ECF No. 7. On April 28, 2022, Plaintiff filed a motion for an extension of time to pay the initial partial filing fee and to be able to pay the fee from his release account. ECF No. 8. Plaintiff paid the initial partial filing fee on May 9, 2022. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, and will accordingly deny the motion for an extension of time to pay the initial partial filing fee and to be able to pay the fee from his release account, ECF No. 8, as moot. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

**2.     SCREENING THE COMPLAINT**

   **2.1     Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

In 2018, Plaintiff called the Sheboygan Police Department after he had loaded firearms pointed at him and was not allowed to leave. ECF No. 1 at 2. Plaintiff is African American and the two people who pointed guns at him were white. *Id.* Plaintiff was the complainant in the matter, but the police disregarded anything Plaintiff said and arrested him instead. *Id.* Plaintiff was arrested for theft of a firearm despite the fact he was not in possession of any firearm let alone a stolen one. *Id.*

From the moment the John Doe officers arrived, it was clear that they would not listen to anything Plaintiff said and were instead interested in protecting the two white people from an "assumed to be dangerous black

man." The John Doe officers arrested Plaintiff without probable cause. The supervising John Doe did nothing to evaluate and correct the situation. *Id.*

Upon arrival at the Sheboygan County Jail, Plaintiff was subjected to being forcibly searched; no weapons or contraband were found. *Id.* at 3. The arresting officers pointed loaded firearms at Plaintiff; at the jail, staff assaulted him with chemical incapacitating agents in connection with the strip search and he was physically assaulted by staff. *Id.* Plaintiff was booked into the jail on false charges and remained there for ten months due to excessive bail being imposed. *Id.*

Defendant Jeffrey A. Jaeger ("Jaeger") was appointed to represent Plaintiff by the Public Defender's Office. *Id.* Jaeger cancelled his speedy trial demand on the 89th day of the 90 days allotted, without Plaintiff's permission and against his will. *Id.* But for Jaeger cancelling the speedy trial demand, Plaintiff would not have been detained for ten months. *Id.*

Defendant Nathan F. Haberman ("Haberman"), the Sheboygan County District Attorney, offered Plaintiff a plea and conditioned it so that if he did not accept the plea, Haberman would charge him with disorderly conduct. *Id.* After Plaintiff refused to plea to a crime he did not commit, Haberman filed the charge in an act of malicious and vindictive prosecution. *Id.*

Defendants Joseph Serge ("Serge") and Alexander Huber ("Huber"), both Sheboygan County Assistant District Attorneys, were aware of these events as active participants in the state case. These defendants failed to take steps to ensure that Haberman's actions were reported to the State Department of Justice and to the office of the Governor. *Id.* Serge and Huber both knowingly aided Haberman in the prosecution against Plaintiff. *Id.*

Page 4 of 15
Case 2:22-cv-00196-JPS   Filed 02/10/23   Page 4 of 15   Document 10

Defendant Grant D. Scaife ("Scaife"), the Sheboygan County District Attorney who succeeded Haberman, took no action to correct the malicious and vindictive charges against Plaintiff. *Id.* Scaife further delayed justice and caused irreparable harm by pushing back Plaintiff's court date in order to force a plea agreement. *Id.*

Plaintiff was finally acquitted of the charges against him on August 3, 2021. *Id.* at 4. As a result of Defendants' actions, Plaintiff suffered anxiety attacks, attempted suicide, and he now has a need for long-term psychological treatment. *Id.* Plaintiff was financially ruined, missed the birth of his first son, lost his home, and lost approximately $17,000.00 in wages. *Id.*

### 2.3 Analysis

First, Plaintiff may proceed on a Fourth Amendment claim against the John Doe defendants for arresting him without probable cause. The Fourth Amendment guarantees the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" and provides that "no warrants shall issue but upon probable cause...." U.S. Const. amend. IV. Probable cause is an absolute defense to a § 1983 claim for wrongful arrest. *See Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). A police officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person to believe that the suspect had committed, is committing, or is about to commit an offense. *Id.* "When an officer has received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, ... he has probable cause." *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal quotation marks and citation omitted).

Plaintiff has sufficiently stated a claim at the pleading stage for false arrest. Plaintiff alleges that he was the victim of a crime and called the police for help. Upon the Does arrival, however, they disbelieved everything he said and arrested him, for no apparent reason, instead of the two individuals holding him hostage. Plaintiff further alleges that he was arrested for theft of a firearm despite having no possession of any firearm let alone a stolen one. Given these facts, the Court finds that Plaintiff may proceed on a Fourth Amendment false arrest claim against the John Doe defendants.

The Court notes parenthetically that it is unclear at the juncture whether Plaintiff will be able to proceed against the supervising Doe for his or her involvement in Plaintiff's arrest. The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Zimmerman v. Tribble,* 226 F.3d 568 (7th Cir.2000). The complaint alleges that the supervising Doe "did nothing to evaluate and correct the situation," but it is unclear what, if any, knowledge the supervisor had regarding the incident. Upon identifying the John Does in this case, Plaintiff will have to show each defendants' personal involvement in order to proceed against each individual defendant.

Second, in relation to his false arrest, the Plaintiff also brings a Wisconsin state-claim for malicious prosecution. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a). Establishing malicious prosecution requires proof of six elements: (1) there must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in this action for malicious prosecution; (2) such former proceedings must have been by, or at the instance of, the defendant in this action for malicious prosecution; (3) the former

proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution; (4) there must have been malice in instituting the former proceedings; (5) there must have been want of probable cause for the institution of the former proceedings; and (6) there must have been injury or damage resulting to the plaintiff from the former proceedings. *Wisconsin Pub. Serv. Corp. v. Andrews*, 2009 WI App 30, ¶ 23, 316 Wis. 2d 734, 747, 766 N.W.2d 232, 238. Here, Plaintiff alleges that the officers lacked probable cause to arrest him, that he was later acquitted of those charges, and that as a result of the malicious prosecution he suffered significant injury. At the pleading stage, the Court therefore finds that Plaintiff may proceed against the John Doe officers for a Wisconsin state-law malicious prosecution claim.

Third, the Court finds that Plaintiff sufficiently states a Fourteenth Amendment excessive force claim against the John Does. Plaintiff alleges that upon arrival to Sheboygan County Jail he had loaded firearms pointed at him, was "assaulted by staff by chemical incapacitating agents in connection with strip search, as well as their physical persons." Because Plaintiff was a pretrial detainee at the time, his claim of excessive force is governed by the Due Process Clause of the Fourteenth Amendment. The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Henderickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Under this standard, whether a defendant used excessive force is an objective, not a subjective, determination, and "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2472–73. Plaintiff's allegations, although lacking in detail, at the pleading stage sufficiently allege the John Doe defendants' use

of force was unreasonable. It is unclear whether the defendants who used unreasonable force are police officers or employees of a different entity. As discussed in detail below, however, the Court will allow the case to move forward with the Sheboygan Chief of Police as a place-holder defendant in order to facilitate discovery as to the identities of the John Doe defendants.

Fourth, the Court finds that Plaintiff may not proceed against Defendants Haberman, Scaife, Serge, or Huber. "A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) ("*Fields I*"). However, where a prosecutor is acting not as a legal advocate but as an investigator, he is entitled only to the qualified immunity that would be granted to police officers carrying out those same duties. *Id.* at 511. Courts distinguish these two roles by looking to the function of the action undertaken. An action is prosecutorial if "the prosecutor is, at the time, acting as an officer of the court" and the action itself is "related[ ] to the judicial phase of the criminal process." *Id.* at 510; *see also id.* at 513 (finding that "[o]nce a defendant is indicted" and the prosecutor begins working towards trial, prosecutorial immunity attaches to his actions). In contrast, "[p]rosecutors do not function as advocates before probable cause to arrest a suspect exists," so any action undertaken during a preliminary investigation is not prosecutorial. *Id.* at 512. Prosecutorial immunity attaches to the failure to comply with disclosure obligations and the suppression of evidence, *id.* at 513; the initiation of a criminal prosecution, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); the evaluation and preparation of evidence collected by the police for presentation at trial, *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); and court appearances to obtain search warrants, *Burns v. Reed*, 500 U.S. 478,

491, (1991). The immunity applies even when the prosecutorial action was done maliciously or unreasonably. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). However, "[a] prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial;" he is still liable for actions taken while in an investigatory role. *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) (*Fields II*).

Here, Plaintiff's allegations against the named prosecutorial defendants involve their decision to charge him and their actions regarding a plea agreement. These actions are in the category of prosecutorial duties as opposed to investigation, and, as such, these defendants are absolutely immune from suit on these claims.

Fifth, Plaintiff cannot proceed against Jaeger, his criminal defense attorney. Plaintiff does not state whether Attorney Jaeger was a public defender or privately counsel retained by the public defender's office. Under either circumstance, however, Plaintiff's § 1983 claim against Attorney Jaeger fails because "a lawyer is not a state actor when he performs the traditional function of counsel to a defendant in a criminal case." *Walton v. Neslund*, 248 F. App'x 733, 733 (7th Cir. 2007). Thus, Attorney Jaeger did not act under color of state law and cannot be held liable under § 1983.

Finally, Plaintiff may not proceed against Sheboygan County or the City of Sheboygan. Section 1983 grants a private right of action against a "person" who acts under color of state law to deprive another of rights under federal law, including the Constitution. A key part of § 1983's doctrinal structure is the difference between individual and governmental liability. In *Monell v. Department of Social Services of City of New York*, the

Page 9 of 15
Case 2:22-cv-00196-JPS   Filed 02/10/23   Page 9 of 15   Document 10

United States Supreme Court found that a plaintiff may proceed against a municipal government so long as a constitutional violation was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. 436 U.S. 658, 690–91 (1978); *Glisson v. Ind. Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). Municipal liability may be extended to private corporations contracted with a government entity that is acting under color of law. *See Howell v. Wexford Health Sources, Inc.,* 987 F.3d 647, 653 (7th Cir. 2021). In a case against a private contractor that provides healthcare to incarcerated people, the "critical question" for liability is "whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)." *Glisson*, 849 F.3d at 379.

Here, Plaintiff does not allege any facts to state a *Monell* claim against any of these institutional defendants. He makes no mention of the failure to train or any unconstitutional policy, customs, or practice. As such, the Court will dismiss Defendants Sheboygan County and the City of Sheboygan from this action.

Because Plaintiff does not know the names of any of the John Doe defendants, the Court will add the Sheboygan Chief of Police—Chief of Police Christopher Domagalski—as a defendant for the limited purpose of helping Plaintiff identify the names of the defendants. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). The Court will order the U.S. Marshals to serve Chief Domagalski with Plaintiff's complaint and a copy of this Order. Chief Domagalski does not have to respond to the complaint. After Chief Domagalski's attorney files an appearance in this case, Plaintiff may serve discovery upon Chief Domagalski (by mailing it to

his attorney at the address in his notice of appearance) to get information that will help him identify the names of the John Doe defendants.

For example, Plaintiff may serve interrogatories (written questions) under Federal Rule of Civil Procedure 33 or document requests under Federal Rule of Civil Procedure 34. Because Plaintiff does not state a claim against Chief Domagalski, Plaintiff's discovery requests must be limited to information or documents that will help Plaintiff learn the real names of the John Doe defendants he is suing. Plaintiff may not ask Chief Domagalski about any other topic, and Chief Domagalski is under no obligation to respond to requests about any other topic.

After Plaintiff learns the names of the individuals that he alleges violated his constitutional rights, he must file a motion identifying their real names. The Court will dismiss Chief Domagalski as a defendant once Plaintiff identifies the John Doe defendants' names. After those defendants have an opportunity to respond to Plaintiff's complaint, the Court will issue a scheduling order for the remainder of the case.

Plaintiff must identify the names of the John Doe defendants within sixty days of Chief Domagalski's attorney appearing. If he does not, or does not explain to the Court why he is unable to do so, the Court may dismiss his case based on his failure to follow the Court's order.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Fourth Amendment false arrest claim against the John Doe defendants.

**Claim Two:** Wisconsin state-law claim for malicious prosecution against the John Doe defendants.

**Claim Three:** Fourteenth Amendment excessive force claim against the John Doe defendants.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's for an extension of time to pay the initial partial filing fee and to be able to pay the fee from his release account, ECF No. 8, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Sheboygan County, Haberman, Scaife, Jaeger, Serge, Huber, and the City of Sheboygan be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Sheboygan Chief of Police Christopher Domagalski be added as a defendant for the limited purpose of helping Plaintiff identify the names of the John Doe defendants;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon Chief Domagalski pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00

per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Chief Domagalski does not have to respond to Plaintiff's complaint; however, he must respond to any discovery requests as described in this Order;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $337.43 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust

account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 10th day of February, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.